FILED

Daniel C.S. Powell
6561 Carthage St.
San Diego, CA 92120

2012 FEB 27  PM 2: 43

CLER... ...DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Securities and Exchange Commission, | CV11-07147 GHK (MANX) |
| Plaintiff, | **Memorandum of Points and Authorities in Support of Defendant Mr. Powell's Opposition to Plaintiff's Motion to Strike Certain Affirmative Defenses and Exhibits From Answer** |
| v. | |
| Christian Stanley, Inc. and Daniel C.S. Powell, | |
| Defendants, | |
| and | |
| Christian Stanley, LLC and Daniel Christian Stanley Powell Realty Holdings, Inc., | Judge: Hon. George H. King |
| | Date of Hearing: 19 March. 2012 |
| Relief Defendants. | Time of Hearing: 9:30 a.m. |

## I. INTRODUCTION

(1) Plaintiff Securities and Exchange Commission filed a 14-page Complaint that clearly failed to comply with FRCP 8(a)(2) because it did not present a "short and plain statement of the claim showing that the pleader is entitled to relief." The Complaint simply contains 37 paragraphs of broad based allegations. Inimical to the type of pleading contemplated by FRCP 8(a)(2), the "Claims for Relief" simply states, "The Commission realleges and incorporates by reference paragraphs 1 through 27 above." This deprives Mr. Powell of "fair notice of what the...claim is and the grounds upon which it rest." Bell Atl. Corp. v. Twombly, 550 U.D. 544,545 (2007)(citation omitted).

1    Indeed, a complaint "requires more than labels and conclusions, and a formulaic

2    recitation of the elements of a cause of action will not do" <u>Twombly, 550 U.S. at 555</u>

3    <u>(internal quotations omitted)</u>. Although Plaintiff states that the "central issue" is "whether

4    Defendant engaged in the unregistered and fraudulent offer and sale of securities",

5    given the insufficient pleading in its Complaint, it is impossible for Mr. Powell to decipher

6    exactly what Plaintiff is attempting to plead because there is no "short and plain

7    statement" as required. These inadequacies made it impossible for Mr. Powell to

8    Answer the complaint for months because it was manifestly unclear what Plaintiff was

9    attempting to communicate via its pleading. Plaintiff must accept the blame for the

10   delays that were caused by its Counsel's incomprehensible pleading. Mr. Powell denies

11   engaging in any dilatory strategies. Rather, he states that the insufficient pleading of

12   Plaintiff is the fundamental cause of these delays because it ruined the coherence of the

13   pleading process from the outset of this case, which prevented him from filing an

14   Answer. Mr. Powell request that the Court take judicial notice of the fact that Plaintiff did

15   not even seek to challenge his Appeal (Doc. 49) until approximately a month after it had

16   been filed (Doc. 52), probably because its Counsel was too busy enjoying the holidays.

17   Hence, the delays in this case truly are the result of Plaintiff's incomprehensible

18   pleading and failure to diligently prosecute this case.

19        (2) Mr. Powell denies having set out to obfuscate the progress of this case with

20   "phantom issues" or using "guises." Rather, he points out that the issues were never

21   clearly articulated to him because of there is no appearance of a "short and plain

22   statement" as required by 8(a)(2), this made it impossible for Mr. Powell to even know

23   what Plaintiff is pleading. The Rules of pleading exist for a reason, and by Plaintiff failing

1    to follow these basic rules, Mr. Powell was left with no choice other than to respond with

2    Affirmative Defenses and negating defenses that address the entire content of

3    paragraphs 1-17 of the Complaint that were realleged in the Claims for Relief. Hence, if

4    Mr. Powell's Answer seems 'prolix', Counsel for Plaintiff only has himself to blame

5    because he failed to include the required "short and plain statement" indicating what

6    Plaintiff was actually pleading. This left Mr. Powell with no choice, but to respond to the

7    litany of allegations contained in paragraphs 1-27 of the Complaint. It is Plaintiff that has

8    engineered these delays by virtue of its bogus pleading, which fails to give Mr. Powell

9    notice of what the cause of action truly is in this case. In fairness, by failing to include a

10   "short and plain statement", Mr. Powell was never given notice of what Plaintiff is even

11   talking about in its Complaint.

12   II. Background and Procedural History

13        (3)  Again, by failing to provide a "short and plain statement" in its Claims for

14   Relief, Plaintiff put Mr. Powell in the unfairly prejudicial position of having to guess and

15   fill in the blanks to figure out what this litigation was even about at its core. This caused

16   Mr. Powell to seek relief by taking such actions to avoid filing an Answer to such an

17   inadequate complaint.

18        (4) Pursuant to FRE 201, Mr. Powell request that the Court take judicial notice of

19   the adjudicative fact that (Doc. 17) issues the preliminary injunction on the "same terms"

20   as indicated in the TRO (Doc. 7). This includes an ORDER for "expedited discovery"

21   (Doc. 7-5). Therefore, this case has been in expedited discovery since its inception.

22   Hence, Mr. Powell's inclusion of legal arguments and citations to case law, evidence,

23   and the FRE, as well as Affidavits are permissible because FRCP 26(d) provides that

1   an exception to FRCP 26(f) may be granted by an appropriate court order. Plaintiff's

2   argument here is meritless because this case its expressly in expedited discovery. From

3   an expedited discovery perspective, the fact that Counsel for Plaintiff has been sitting

4   on his hands only provides further proof of Plaintiff's failure to diligently prosecute this

5   case.

6       (5) This paragraph contains statements of legal standards which require no

7   response from Mr. Powell.

8       (6) An affirmative defense need only give a plaintiff "fair notice of the defense"

9   Simmons v. Navajo Cnty., 609 F. 3d 1011, 1023 (9th Circuit) (internal quotations marks

10  omitted). Mr. Powell's affirmative defenses challenged on this ground give fair notice of

11  the nature of each defense. Mr. Powell has given adequate notice of each defense and

12  provided sufficient detail in his pleading to substantiate his defenses. The Court should

13  find this sufficient under FRCP 8(b)(1) and 8(c), especially given the fact that this

14  method of pleading affirmative defenses is set forth in the exemplar text of Rule 8(c).

15  See also Baroness Small Estates, Inc. v. BJ's Restaurants, Inc., No. SACV 11-00468-

16  JST (Ex), 2011 WL 3438873, at *5-6 (C.D. Cal. Aug. 5, 2011) (defendant notified

17  plaintiff of its affirmative defenses, which, while boilerplate, sufficed at the outset of the

18  case). Regardless, the insufficient pleading of the Commission, which does not contain

19  a "short and plain statement" is what forced Mr. Powell to write his Answer and

20  Affirmative Defenses in response to the entire realleged paragraphs 1-27.

21  (7) The Commission has engaged in acts and practices which have specifically violated

22  its Congressional Mandate, which does not authorize it to bring actions using false and

23  fraudulent information and misrepresentations. Mr. Powell states that the affidavits in his

1   Answer clearly show egregious misconduct that rises to a Constitutional level, and has

2   prevented him from adequately defending himself before this Court because he has

3   been unable to retain competent Counsel. This matter is under an ORDER for

4   expedited discovery (Doc. 17). The Exhibits included in his Answer clearly provide facts

5   to demonstrate that it is proper for Mr. Powell to assert "Unclean Hands", "Fraud Upon

6   the Court", "Bad Faith", and the like in his Answer. To the extent that the Commissions

7   faulty investigative practices caused the allegations of fraud against Mr. Powell, it is

8   necessary, proper, and appropriate for such evidentiary materials and arguments to be

9   included in his Answer.

10       A. Nine Affirmative Defenses Should be Stricken Because They Are Facially

11   Invalid

12       (8) FRCP 8(c) is not limited to affirmative defenses, it also allows for "other

13   defenses" to be raised. Hence, a better approach to resolve Plaintiff's contention is to

14   simply strike the word "Affirmative" because these are legitimate "other defenses".

15       (9) While Mr. Powell acknowledges that "failure to state a claim" is a pleading

16   deficiency and not an 'affirmative defense', in this case it a category of 'other defenses'

17   because it is absolutely true beyond the shadow of a doubt that Plaintiff's Claims for

18   Relief do not contain a "short and plain statement" as required by FRCP 8(a)(2).

19   Furthermore, given the heightened pleading standards delineated in *Twomby/Iqbal*,

20   Counsel for Plaintiff is profoundly incorrect in asserting that simply because Defedant's

21   12(b)(6) motion to dismiss (Doc. 36) was denied that this automatically equates to the

22   Court affirming that the Complaint does, in fact, state a claim for relief.  In order to

23   survive a motion to dismiss, the heighted pleading standards require only that a

1 complaint must contain sufficient factual matter, accepted as true, to "state a claim for

2 relief that is plausible on its face." (quoting Twombly, 550 U.S. at 570.). Hence, even a

3 Complaint that does not state a claim can still survive an initial motion to dismiss

4 because of the heightened pleading standards. However, this does not mean that the

5 pleading deficiency goes away, or become irrelevant to the action. Mr. Powell states

6 that the Court should simply strike the word "Affirmative" from this Defense because it is

7 a legitimate "Other Defense" that is allowed under 8(c).

8       (10) Mr. Powell acknowledges that "Failure to Plead Fraud With Particularity" is

9 more appropriate categorized as an "Other Defense." Hence, the word "Affirmative"

10 should be stricken, but the defense remains valid under 8(c). Rule 9(b) "does not allow

11 a complaint to . . . lump multiple defendants together but require[s] plaintiffs to

12 differentiate their allegations when suing more than one defendant." Cisneros v. Instant

13 Capital Funding Grp.,Inc., 263 F.R.D. 595, 606-07 (E.D. Cal. 2009) (quoting Swartz v.

14 KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007). The Claims for Relief related to fraud

15 fail to differentiate between Mr. Powell and defendant Christian Stanley, Inc. Averments

16 of fraud must be accompanied by "the who, what, when, where, and how" of the

17 misconduct charged. Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir.1997) (internal

18 quotation marks omitted).

19       (11) Mr. Powell states that while not an "Affirmative Defense", his contention that

20 the preliminary injunction is overbroad and does not conform to 65(d) is a legitimate

21 "Other Defense" within the meaning of 8(c). Therefore, the Court should simply strike

22 the word "Affirmative" from the defense. Mr. Powell acknowledges that the Commission

23 is authorized to enjoin future violations of securities laws, but this is not the point. The

1   Stanley, Inc. and its associates as corporate lodging for travel and for clients whom

2   were visiting. These addresses were not solely Mr. Powell's addresses. Has the

3   Commission conducted two depositions as is required for admissibility under the FRE,

4   this confusion and unfair prejudice would have been averted. The Commission only has

5   itself to blame for the inaccuracies that have resulted from the deposition, which

6   simultaneous forced Mr. Powell to make representations on behalf of two distinct legal

7   persons. Although Mr. Powell maintained files in his personal residence, there are other

8   pertinent accounting files that are domiciled in San Diego County, which Mr. Powell did

9   not maintain. An executive suite with a conference room an a toll-free number does not

10   create a sufficient evidence to establish that Los Angeles is the appropriate venue in

11   light of the extenuating  and unduly burdensome circumstances that Mr. Powell will be

12   faced with if the venue is not changed to the S.D. Cal. Indeed, this action might have

13   been properly brought in the S.D. Cal. and , in the interest of justice, it should be

14   transferred as request by Mr. Powell.

15        (9) Again, Mr. Powell was abundantly confused during his deposition with the

16   Commission because it was conducted in a manner that did not conform to the Federal

17   Rules of Evidence because he was simultaneously deposed in the capacities of two

18   distinct legal persons: (1) Mr. Powell, as a natural person, and (2) Christian Stanley as a

19   Corporation. There is absolutely no reliable information that can be gleaned from this

20   deposition due to this inadequacy. Hence, the evidence from the deposition is

21   inadmissible. Mr. Powell was actually incorrect as a result of his confusion and he has

22   attached a copy of the Storefront lease as Exhibit 2 to this Reply. It shows that the

23   Storefront in San Diego was indeed a Christian Stanley location. Had the Commission

1   point is that **"An overbroad preliminary injunction is an abuse of discretion."**

2   <u>Lamb-Weston, Inc. v. McCain Foods Ltd., 941 F.2d 970, 974 (9th Cir. 1991).</u> The point

3   is that the preliminary injunction in this action does not adhere to Rule 65(d), which

4   requires an injunction to "state its terms specifically" and "describe in reasonable detail

5   the act or acts restrained." FRCP 65(d)(1) (B)-(C). Mr. Powell has no clear idea of

6   exactly what he is enjoined from doing because the preliminary injunction simply states

7   that --**"Defendants Christian Stanley and Powell, and their officers, agents,**

8   **servants, employees, attorneys, subsidiaries and affiliates, and those persons in**

9   **active concert with any of them**"-- are preliminarily enjoined from, directly or indirectly

10  violating what appears to be the text of certain securities statues. "The benchmark for

11  clarity and fair notice is not lawyers and judges, who are schooled in the nuances of

12  [the] law," but instead the "lay person, who is the target of the injunction." <u>Reno Air

13  Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006)</u>; These are the

14  controlling standards with respect to Mr. Powell. Mr. Powell appears in *pro per*. Mr.

15  Powell has received no formal training, or schooling in the law. (see also <u>Schmidt v.

16  Lessard, 414 U.S. 473, 476 (1974)</u> ("[T]he specificity provisions of Rule 65(d) are no

17  mere technical requirements. The Rule was designed to prevent uncertainty and

18  confusion on the part of those faced [Mr. Powell] with injunctive orders, and to avoid the

19  possible founding of a contempt citation on a decree too vague to be understood."). <u>Del

20  Webb Communities v. Partington 9947</u>. Such is the case with respect to the

21  impermissibly broad preliminary injunction against Mr. Powell.

22  (12) Mr. Powell states that "Failure to Exhaust Administrative Remedies" is a valid

23  "Other Defense" because, although the Commission has the authority to bring the

1   instant action, such is an egregious waste of judicial economy and of agency resources.

2   The word "Affirmative" should be stricken, but this remains facially valid as an "Other

3   Defense" within the meaning of 8(c). Court intervention should only be evoked when

4   there is no other adequate means to address the issue at hand. Mr. Powell states that

5   the Commission abused its discretion by bringing this instant action without pursuing

6   other more cost effective means that would have been more effective in regulating his

7   activities. Now this action must undergo a costly litigation that could have been avoid.

8   Hence, the Commission has failed to truly fulfill its Congressional Mandate by being too

9   trigger happy in bring this instant action and it has still failed to protect investors as it

10  claims it seeks to accomplish.

11          (13) Mr. Powell acknowledges that this should be stricken.

12          (14) Mr. Powell acknowledges that this should be stricken.

13          (15) Mr. Powell acknowledges that this should be stricken. ***add more later***

14          (16) Mr. Powell states that all the so-called evidence against him is barred by

15  FRE 802 and is not subject to the exceptions delineated in FRE 803/804.

16          (17) Mr. Powell acknowledges that "Additional Defenses" is not an affirmative

17  defense, or other defense. Moreover, he states that Rules 15 and 16 provide him with

18  protections as sought by his reservation of rights statement. Hence this should be

19  stricken.

20          (18) Mr. Powell states that the word "Affirmative" should be stricken from the first

21  and second "Defenses", but that they should remain in his Answer because of the fact

22  that the Complaint does not contain a "short and plain statement" as required by 8(a)(2),

23  nor conform to the requirements of 9(b). The pleading deficiencies in the Complaint

1   merit retaining the "Failure to state a claim" and "Failure to plead fraud with particularity"

2   and 8(c) provides that these may be included as "other defenses". Mr. Powell states that

3   the word "Affirmative" should be stricken from the sixth defense, but that it should

4   remain in his Answer because it is appropriate as an "other defense" within the meaning

5   of 8(c) due to the impermissibly broad language of the preliminary injunction. Mr. Powell

6   states that the word "Affirmative" should be stricken from the seventeenth defense, but

7   that it should remain as well under 8(c) as an "other defense". Mr. Powell states that the

8   word "Affirmative" should be deleted from the fifty-third defense, but that under 8(c) it

9   should remain as an "other defense." Mr. Powell agrees to strike the forty-eighth, forty-

10  ninth, fiftieth, and fifty-fourth affirmative defenses.

11      B. Twelve Defenses Should Be Stricken Because They Merely Negate Elements

12  of Plaintiff's Case.

13  (7th, 26th, 28th, 29th, 30th, 34th, 39th, 41st, 42nd, 44th, 45th, and 52nd)

14      (19) As an initial matter, Mr. Powell rejects Plaintiff's argument about "negative

15  defenses." FRCP 8(b)(1)(A) contemplates pleading all defenses; no limitation as to

16  affirmative or defenses is expressed in the test of the rule. The technicality raised by

17  Plaintiff does not affect whether it has been put on fair notice of Mr. Powell's defenses.

18  The Court should find that striking the word "Affirmative" from the defenses herein would

19  be a more straightforward resolution to this perceived problem.

20      (20) Mr. Powell reiterates "(19)" above with full force and effect as if full stated

21  here.

22      (21) Mr. Powell reiterates "(19)" above with full force and effect as if full stated

23  here.

1   (22) Mr. Powell reiterates "(19)" above with full force and effect as if full stated

2 here.

3   (23) Mr. Powell reiterates "(19)" above with full force and effect as if full stated

4 here.

5   (24) The word "Affirmative" should be stricken from the 7th, 26th, 28th, 29th, 30th,

6 34th, 39th, 41st, 42nd, 44th, 45th, and 52nd "Defenses" because they are "Negative

7 Defenses," but they should remain substantively the same outside of this technical

8 correction. FRCP 8(b)(1)(A) contemplates pleading all defenses; no limitation as to

9 affirmative or defenses is expressed in the test of the rule. The technicality raised by

10 Plaintiff does not affect whether it has been put on fair notice of Mr. Powell's defenses.

11 The Court should find that striking the word "Affirmative" from the defenses herein would

12 be a more straightforward resolution to this perceived problem.

13   C. Seventeen Of Powell's Defenses Should Be Stricken Because They Are

14 Inapplicable

15   1. Two Defenses Based On The Supposed Preemption Of The Federal

16 Securities Laws By State Insurance Laws Fail

17   (25) Due to Plaintiff's failure to adhere to 8(a)(2) by providing a "short and plain

18 statement" in its section labeled as "claims for relief", it is impossible to decipher what

19 Plaintiff is specifically or particularly alleging. All that Plaintiff provides is a statement

20 that "The Commission realleges and incorporates by reference paragraphs 1 through 27

21 above." Next, Plaintiff proceeds to provide a boilerplate and formulaic recitation of what

22 appears to be certain sections of the securities laws. Indeed, the word "Debenture" does

23 not even appear in the so-called "Claims for Relief" at all, so while Plaintiff now claims

1  that said "Debentures" are its focus, it is impossible to know this from reading its sloppy

2  pleading. In Paragraph 12, Plaintiff states--"*Powell, and two of the entities he controls,*

3  *Christian Stanley and Christian Stanley, LLC, have ostensibly been informing the public*

4  *about the investment opportunity represented by life settlement agreements, and*

5  *building "brand awareness" of the company's role as a facilitator or broker of*

6  *transactions between buyers and sellers of life insurance policies, since 2004*"-- this is a

7  description of the business of insurance. Thus, the §1012(b) and "Insurance Contracts"

8  affirmative defenses are valid as a matter of law. In *National Secs.,* the SEC alleged

9  misrepresentations to stockholders of an insurance company and it was the existence of

10  "stockholders" that was the nexus to connect the SEC to the case. In this action, there

11  are no stockholders and therefore, there is no nexus to connect Mr. Powell to the SEC.

12  (26) Mr. Powell reiterates "(25)" above with full force and effect as if full stated here.

13  Furthermore, Mr. Powell states that Plaintiff's insufficient pleading that fails to conform

14  to 8(a)(2) and 9(b) is the only red herring. Other than realleging paragraphs 1-27,

15  Plaintiff's inadequate pleading does not enable Mr. Powell to decipher, or give him

16  notice of what Plaintiff is referring to at all in its so-called "Claims for Relief". Due to

17  these failures, Mr. Powell is entitled to the §1012(b) and "Insurance Contracts"

18  affirmative defenses as a matter of law.

19      (27) Mr. Powell reiterates "(25)" and "(26)" above with full force and effect as if

20  fully stated here.

21      2. Five Defenses Address Elements that Only Private Plaintiff's, Not The

22  Commission, Must Prove.

23  (12th, 13th, 15th, 16th, and 36th)

1       (28) Mr. Powell denies that the twelfth defense "No Causation" and thirty-sixth

2    defense "Force Majeure" should be stricken. First, in terms of "No Causation", it is

3    apparent that the Commission can not hold Mr. Powell responsible for allegations that

4    he did not cause. Despite its law enforcement status, the Commission must bear its

5    burden of proof that Mr. Powell was the cause of allegations it makes towards him. If

6    Mr. Powell was not the "cause", it obviously precludes the "effect" sought by the

7    Commission. This is inherently true otherwise the Commission could randomly select

8    persons to charge with fraud without even proving that they were the cause of such

9    alleged activities.  Next, in terms of "Force Majeure", Mr. Powell can not be held liable

10   for events or shortages that are outside of the realm of his control. These are legitimate

11   defenses that should not be stricken. Mr. Powell states that only the thirteenth, fifteenth,

12   and sixteenth defenses should be stricken.

13       (29) Mr. Powell acknowledges that the thirteenth, fifteenth and sixteenth

14   defenses should be stricken, but denies that the twelfth and thirty-sixth defenses should

15   be stricken.

16       (30) Mr. Powell reiterates "(28)" above with full force and effect as if fully stated

17   here. Furthermore, Mr. Powell denies that the twelfth and thirty-sixth defenses should

18   be stricken.

19       3.  Five Defenses Are Unavailable As A Matter Of Law In Commission Actions

20   (8th, 9th, 10th, 32nd, and 40th)

21       (31) Mr. Powell admits that the eighth defense should be stricken.

22       (32) Mr. Powell denies that the Ninth defense should be stricken because

23   estoppel by representations of facts as used herein by Mr. Powell is the avertment that

1   the preponderance of relevant SSCDI lenders have made particular express

2   representations to him that prove that Mr. Powell made all relevant disclosures and that

3   no misrepresentations were made by Mr. Powell to financial participants. Hence no

4   fraud was committed by Mr. Powell. Likewise, this is a Court of equity and as such, the

5   doctrine of equitable estoppel--the thirty-second defense--does apply to the

6   Commission. As such, Mr. Powell denies that the thirty-second defense should be

7   stricken. Mr. Powell admits that the tenth defense should be stricken.

8         (33)  Mr. Powell admits that the fortieth defense should be stricken.

9         (34)  Mr. Powell admits that the eighth, tenth and fortieth defenses should be

10   stricken, but denies that the ninth and thirty-second defenses should be stricken. As a

11   matter of law, Mr. Powell states that the ninth and thirty-second defenses are available

12   in this instant action.

13         4. Five Defenses Based On Alleged Conduct to Third Parties Cannot Bar An

14   Action By The Commission.

15   (9th, 10th, 24th, 37th, and 38th Defenses)

16         (35) The defenses based upon the actions of investors are highly relevant to this

17   matter and should not be stricken. As intended herein by Mr. Powell, these defenses

18   are meant to assert that the SSCDI lenders have made express representations of facts

19   to him that prove that all relevant disclosures were made by Mr. Powell. Despite is

20   government status, the Commission can not create allegations from thin air. To the

21   extent that SSCDI lenders expressly state and testify that all relevant disclosures were

22   made to them by Mr. Powell, the Commission is barred from stating otherwise. This

23   instant action allegedly involves a specific set of approximately 50 SSCDI lenders whom

1   allegedly placed approximately $4.5MM (USD) with defendant Christian Stanley, Inc.

2   Hence, these SSCDI lenders are the "legal DNA" of this litigation. To the extent that

3   these SSCDI lenders expressly state and testify that such disclosures at issue in this

4   matter were properly made to them by Mr. Powell, the Commission is unable to create

5   its version of the truth from thin air. Indeed, the preponderance of SSCDI lenders have

6   expressly stated to Mr. Powell that the allegations in this litigation are not accurate

7   because all relevant disclosures were made to them. The Commission's claims of fraud

8   against Mr. Powell are precluded by the express testimony of the preponderance of

9   SSCDI lenders.

10       (36) Mr. Powell reiterates "(35)" above with the full force and effect as if fully set

11   forth here.

12       (37) The Commission's Congressional Mandate is to protect investors from

13   misrepresentation, false statements, and fraud. Mr. Powell fully disclosed all relevant

14   facts concerning this matter to all SSCDI lenders whom he came into contact with and

15   can prove this by the preponderance of the evidence, which includes express

16   representations made by the SSCDI lenders. The Commission asserts baseless claims

17   against Mr. Powell premised upon false and/or misleading statements regarding

18   disclosures that were, or were not, made to SSCDI participants in the SSCDI. The

19   reference to Web v. City of Richland case is irrelevant to this controversy because this

20   case did not involve a governmental agency. Mr. Powell states that he fully disclosed all

21   risks to the SSCDI lenders that he came into contact with and that they voluntarily

22   assumed this risk and participated in the SSCDI loan program in full knowledge of all

23   material facts. The reference to Web v. City of Richland is immaterial in this action

1   because the Plaintiff is the Commission, so there is no means for the Commission to

2   have had knowledge of the risk. At the end of the day, the bottom line is that all material

3   facts were disclosed to the SSCDI lenders and Mr. Powell can prove this by the

4   preponderance of the evidence. Hence, this litigation is without merit.

5       (38) Despite its Congressional Mandate, the Commission can not substantiate its

6   allegations out of thin air. Mr. Powell's thirty-eighth defense is intended to assert that all

7   relevant disclosures were, in fact, made to the SSCDI lenders, and that the

8   preponderance of these financial participants have expressly represented to Mr. Powell

9   that the Commission's allegations are meritless.

10      (39) The Commission is not mandated to make decisions for investors. Rather, it

11  is mandated to protect investors from misrepresentations and fraudulent practices.

12  Investors are free to make financial decisions as they desire and such is the case in this

13  instant action. Although the Commission blindly contends otherwise, Mr. Powell can

14  prove by the preponderance of the evidence that all relevant and material facts were, in

15  fact, made to the SSCDI lenders. While the SEC does not stand in the shoes of

16  investors, it is mandated to protect investors from false statements and

17  misrepresentations. Indeed, to the extent that the preponderance of SSCDI lenders

18  have expressly represented to Mr. Powell that the allegations contained in this instant

19  action are false, the Commissions claims of fraud against Mr. Powell are barred.

20  Despite its Congressional Mandate, the Commission is not authorized to make

21  investment decisions for investors. The Commissions is only authorized to protect

22  investors to the extent that they are being subjected to misrepresentations. Therefore, if

23  the preponderance of SSCDI lenders expressly represent and testify that the

1   Commissions allegations are false, the Commission is barred from stating otherwise.

2   Indeed, Mr. Powell states that the vast majority of SSCDI lenders have expressly

3   represented and testified, under penalty of perjury, that the allegations against him are

4   profoundly without merit. Hence, this is a frivolous litigation that serves no lawful or

5   moral purpose and is simply an engine of oppression against Mr. Powell. As such, the

6   ninth, tenth, twenty-fourth, thirty-seventh, and thirty-eighth defenses are valid and

7   should not be stricken.

8       D. Four Defenses are Inapplicable To The Claims For Relief Asserted In the

9   Complaint and Should be Stricken.

10      (40) Again, due to Plaintiff's failure to sufficiently plead in accordance with

11  8(a)(2), which requires a "short and plain statement", Mr. Powell was left guessing at

12  what precisely Plaintiff is attempting to plead. By only realleging paragraph 1-27 in its

13  purported "Claims for Relief", Mr. Powell was placed in the unfairly prejudicial position of

14  not knowing exactly what the Commission is even pleading about. Hence, these

15  Defenses are not immaterial or impertinent and should not be stricken.

16      (41) While the Commission has not alleged a Claim for Relief related to a breach

17  of contract, it has realleged paragraphs 1-27, which include several references to the

18  SSCDI contracts and partial quotations from these documents. The Commission alleges

19  that the terms and conditions of these SSCDI agreements were not adhered to by Mr.

20  Powell, such claims are false. Mr. Powell includes the eleventh defense to provide

21  Plaintiff with notice that his defense will argue that all relevant terms of the SSCDI loan

22  agreements were adhered to. The SSCDI lending parties stipulated express and implied

23  provisions regarding these transactions and Mr. Powell always operated within the

1   terms and conditions of these agreements. The Commission attempts to plead fraud by

2   citing the alleged terms of the SSCDI loan agreements. Mr. Powell states that such

3   contrivances are meritless. As such, the eleventh defense is valid because the

4   fraudulent allegations made against Mr. Powell are premised upon the Commissions

5   belief that Mr. Powell did not adhere to the terms and conditions of the SSCDI loan

6   agreements.

7       (42) The "civil penalties" requested by the Commission are essentially criminal in

8   nature and Section 20(d) provides for parallel investigations to be brought by the

9   Commission and the Attorney General. Hence, which the label used is "civil penalties"

10  the economic reality is that these penalties are statutorily punitive in nature. Therefore,

11  Mr. Powell's twenty-seventh defense--"No Punitive Damages"--is facially valid and must

12  not be stricken. Plaintiff's attempt to usurp the provisions of the Fifth and Fourteenth

13  Amendments to the United States Constitution and various provisions of the California

14  Constitution and Civil Code must fail as a matter of law.

15      (43) Mr. Powell states that at all times he operated in good faith and is entitled to

16  appropriate immunity as such. Mr. Powell request that the Court take judicial notice of

17  this defense and interpret it *sua esponte* as appropriate.

18      (44) Mr. Powell states that at all times he operated in good faith and is entitled to

19  appropriate immunity as such. Mr. Powell request that the Court take judicial notice of

20  this defense and interpret it *sua esponte* as appropriate.

21      (45) Mr. Powell denies that the eleventh, twenty-seventh, forthy-third, and fifty-

22  first affirmative defenses should be stricken because the apply to the inferences and

23  implied claims contained in the realleged paragraphs 1-27 of Plaintiff's "Claims for

1   Relief". Due to Plaintiff's failure to plead in accordance with 8(a)(2) and 9(b), which

2   require a "short and plain statement", Mr. Powell is entitled to these defenses as a

3   matter of law.

4       E. Defenses Based On Alleged Commission Misconduct In Witness Interviews

5   And The Affidavits on Which They Are Based Should Be Stricken

6   (14th, 25th, 32nd, and 35th Defenses)

7       (46)  This matter has been in "expedited discovery" since its inception (Doc.17),

8   the preliminary injunction continued the "same terms" as the TRO, which included

9   "expedited discovery" (Doc. 7-5). Therefore, Plaintiff's contention that it is inappropriate

10  to included Affidavits and evidentiary matters in Mr. Powell's Answer are patently false

11  and demonstrate a profound lack of understanding of the legal process. The evidence

12  submitted by the Commission in support of the TRO was fraudulent. Indeed, each and

13  every one of its alleged witnesses came forward to testify that the Commission engaged

14  in egregious acts of misrepresentation. This shows a pattern of fraudulent behavior and

15  while the Commission may "flatly deny" misleading investors during its investigative

16  interviews, it can not do so with a "straight face." The Commission's double-standard

17  here is disturbing. The Commission can not plausibly claim that these witnesses are

18  suddenly unreliable just because the tide has turned in Mr. Powell's favor. These

19  persons--Mr. Lawrence, Mr. Paulsteiner, and Ms. Genasci--reviewed the pleadings

20  submitted by the Commission and notified Mr. Powell of the Commission's fraudulent

21  misrepresentations on their behalf. This Court must not turn a blind eye on such a

22  miscarriage of justice. Defendant has clearly demonstrated egregious misconduct on

23  the part of the Commission which rises to a Constitutional level and has prevented Mr.

1    Powell from defending himself in this actions because he has not been able to retain an

2    attorney to assist him with his defense in this enforcement action.

3         (47) These Affidavits clearly demonstrate fraud upon the court because they

4    show that false information was purposefully propagated by the Commission for the

5    purpose of framing Mr. Powell and obtaining a TRO against him. Plaintiff's attempt to

6    explain this as merely contextual is a red herring that demonstrates a consciousness of

7    guilt and thereby seeks to minimize the severity of Plaintiff's egregious misconduct.

8         (48) The Doctrine of Equitable Estoppel applies here because the SEC engaged

9    in affirmative misconduct and concealment of material facts, such as the fact that Mr.

10   Paulsteiner mailed a Letter to the SEC stating that he was satisfied with his investment.

11   The SEC (1) knew that it was engaging in the affirmative misconduct, (2) intended for

12   the person of the Court to act upon the misconduct by freezing Mr. Powell's assets, (3)

13   the person of the Court was ignorant of the misconduct when it issued the TRO, and (4)

14   the person of the Court relief on the SEC misconduct in freezing Mr. Powell's assets.

15   The Claims of the SEC are barred by the Doctrine of Equitable Estoppel. That fact that

16   the Commission did not interact with the various witnesses until August 2011 is a

17   misnomer. The bottom line is that the Commission fabricated evidence to hoodwink the

18   Court into freezing Mr. Powell's assets.

19        (49) Mr. Powell need only demonstrate that he did not mislead the SSCDI

20   lenders. Mr. Powell can not be held liable for the actions of unnamed third-parties who

21   are part of the greater Christian Stanley, Inc. See additional Affidavits of Paulsteiner and

22   Genasci, which do demonstrate that no misrepresentation occurred from Mr. Powell.

1    (50) Regardless, we are in expedited discovery, so these Affidavits are

2    permissible to include in Mr. Powell's Answer.

3    (51) Mr. Powell denies that the fourteenth, twenty-fifth, thirty-second, and thirty-

4    fifth affirmative defenses are insufficient and he states that these must not be stricken.

5    Mr. Powell states that the expedited discovery nature of this action provides the direct

6    reason to include these Affidavits in his Answer. These are egregious

7    misrepresentations that have been created by the Commission for the express purpose

8    of presenting fraudulent evidence to the Court of the purpose of depriving Mr. Powell of

9    his private property through obtain a TRO premised upon fraud.

10    F. Seven Constitutional Defenses Should be Stricken

11    (18th, 19th, 20th, 22nd, 23rd, 46th, and 47th)

12    (52) Mr. Powell has provided fair notice of the Constitutional defenses and has

13    adequately plead these defenses. These must not be stricken.

14    (53) The Affidavits show selective prosecution and a discriminatory motive to

15    fabricate a lawsuit from thin air. The fact that he was the Sole Founder is irrelevant

16    because he was not the sole decision maker.

17    (54) The Forty-Sixth affirmative defense entitled "Selective Prejudice During

18    Deposition" makes it clear that Mr. Powell was selectively prejudiced because similarly

19    situated persons are invariably never deposed in the same "shotgun" manner that was

20    inflicted on Mr. Powell. The bottom line is that Mr. Powell and Christian Stanley, Inc. are

21    two distinct legal persons and deposing him simultaneously in two split capacities

22    violates the federal rules of evidence. Mr. Powell has made it quite clear that this

23    deposition made it impossible for him to understand if the question related to him

1   personally, or to Christian Stanley as a corporation. This caused him to relay inaccurate

2   information, which is inadmissible under the FRE. Regardless, the deposition was not

3   legally cognizable because the FRE do not allow for one person to be deposed on

4   behalf to two separate persons. Just as two subpoenas were issued, there should have

5   been two depositions to promote clarity and admissibility in the representations made by

6   Mr. Powell. Mr. Powell was selective prejudiced during his deposition because he was

7   unable to understand the questions being asked of him.

8       (55) Mr. Powell states that his Fourth Amendment private property rights were

9   violated by the Commissions submission of fraudulent Declarations to the Court. The

10  Court has the right to freeze assets, but this must be based on truthful information. The

11  Commission made a false showing of probable cause by fabricating evidence against

12  Mr. Powell.

13      (56) Mr. Powell states that his due process rights were violated by the panoply of

14  fraudulent Declarations submitted to the Court by the Commission.

15      (57) Mr. Powell asserts his jury trial rights to state that the Commission must bear

16  its burden of proof to prove its case beyond a reasonable doubt.

17      (58) The fraud perpetuated against Mr. Powell violated his Ninth Amendment

18  Rights. While Courts do uphold SEC enforcement actions, they do not uphold

19  enforcement actions premised upon fraudulent Declarations, such as in this matter.

20      (59) This violates State Supremacy rights and should not be stricken.

21      (60) The eighteenth, nineteenth, twentieth, twenty-second, twenty-third, forty-

22  sixth, and forty-seventh defenses should remain in full force because the fraudulent

23  enforcement actions and Declarations amount to Constitutional violations.

1    IV. Conclusion

2        Mr. Powell states that only the certain Defenses should be stricken, but not the

3    entirety as requested by the Commission, as described herein. This case is already in

4    Expedited Discovery pursuant to ORDER (Doc. 7-5) and (Doc. 17). Therefore, the

5    inclusion of Affidavits is necessary and proper.

6    _____                    2/27/12

7    Daniel C.S. Powell                           Date

8

9    Copies of ANSWER to:        Spencer E. Bendell

10                                Securities and Exchange Commission

11                                5670 Wilshire Boulevard, 11th Floor

12                                Los Angeles, California 90036

13

14                               Lucee S. Kirka

15                               Securities and Exchange Commission

16                               5670 Wilshire Boulevard, 11th Floor

17                               Los Angeles, California 90036

18

19                               Peter F. Del Greco

20                               Securities and Exchange Commission

21                               5670 Wilshire Boulevard, 11th Floor

22                               Los Angeles, California 90036

23

24                      **CERTIFICATE OF SERVICE**

25

26   I certify that I have served copies of the forgoing, via personal delivery, to:

27

28   Spencer E. Bendell

29   Securities and Exchange Commission

30   5670 Wilshire Boulevard, 11th Floor

31   Los Angeles, California 90036

32

33

34   Lucee S. Kirka

35   Securities and Exchange Commission

36   5670 Wilshire Boulevard, 11th Floor

37   Los Angeles, California 90036

38

39   Peter F. Del Greco

40   Securities and Exchange Commission

41   5670 Wilshire Boulevard, 11th Floor

1  Los Angeles, California 90036
2
3  _____        2/27/12
4  Daniel C.S. Powell                     _____
5                                         Date
6

7

8

9