1    GARY OWEN CARIS (SBN 88918)
     gcaris@mckennalong.com
2    LESLEY ANNE HAWES (SBN 117101)
     lhawes@mckennalong.com
3    DENTONS US LLP
     300 South Grand Avenue, 14th Floor
4    Los Angeles, CA  90071-3124
     Telephone:  (213) 688-1000
5    Facsimile:    (213) 243-6330

6    Attorneys for Permanent Receiver
     **ROBB EVANS & ASSOCIATES LLC**
7

8

9            **UNITED STATES DISTRICT COURT**

10          **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12   SECURITIES AND EXCHANGE COMMISSION, | CASE NO. CV11-07147 GHK (Ex) |
| 13 | **DECLARATION OF BRICK KANE** |
| 14         Plaintiff, | **IN SUPPORT OF MOTION FOR ORDER: (1) APPROVING FINAL** |
| 15         v. | **REPORT AND ACCOUNTING; (2) APPROVING RECEIVER'S AND** |
| 16   CHRISTIAN STANLEY, INC.; and DANIEL C.S. POWELL,, | **COUNSEL'S FEES AND EXPENSES FROM INCEPTION THROUGH** |
| 17         Defendants, | **CLOSING; (3) DISCHARGING RECEIVER; (4) RELIEVING** |
| 18   and | **RECEIVER OF ALL DUTIES AND LIABILITIES; (5) AUTHORIZING** |
| 19   CHRISTIAN STANLEY, LLC; and | **ABANDONMENT AND DESTRUCTION OF RECORDS; (6)** |
| 20   DANIEL CHRISTIAN STANLEY POWELL REALTY HOLDINGS, | **GRANTING RELIEF FROM NOTICE UNDER LOCAL RULE 66-7; AND (7)** |
| 21   INC., | **FOR RELATED RELIEF** |
| 22         Relief Defendants. | **DATE:**     February 22, 2016 |
| 23 | **TIME:**     9:30 a.m.<br>**PLACE:**   **Courtroom 650** |

24

25

26

27

28

USW 805354225.1

I, Brick Kane, declare:

1.     I am the President and Chief Operating Officer of Robb Evans & Associates LLC ("Receiver"), which was appointed as permanent receiver of Christian Stanley, Inc., Christian Stanley, LLC and Daniel Christian Stanley Powell Realty Holdings, Inc. and their subsidiaries and affiliates ("Receivership Defendants") pursuant to the Preliminary Injunction issued September 19, 2011.  I am one of the senior members of the Receiver with primary responsibility for the activities of the Receiver.  I have personally participated in the Receiver's activities from the inception of the receivership to the present and will be one of the members primarily responsible for supervising the completion of the administration of the receivership estate. I have personal knowledge of the matters set forth in this declaration, and if I were called upon to testify as to these matters, I could and would competently testify based upon my personal knowledge. If called upon to testify as to the facts set forth in this declaration, I could and would testify competently thereto since the facts are true and within my own personal knowledge.

2.     On September 1, 2011, Robb Evans & Associates LLC ("Receiver") was appointed temporary receiver against the Receivership Defendants, Robb Evans was appointed as the temporary receiver of  Christian Stanley, Inc., Christian Stanley, LLC and  Daniel Christian Stanley Powell Realty Holdings, Inc. ("Realty Holdings"), and their subsidiaries and affiliates ("Receivership Defendants") pursuant to a Temporary Restraining Order and Orders:  (1) Freezing Assets; (2) Appointing A Temporary Receiver; (3) Prohibiting the Destruction of Documents; (4) Requiring Accountings; (5) Allowing Expediting Discovery; and Order to Show Cause Re Preliminary Injunction and Appointment of a Permanent Receiver (Doc. No. 7).  Thereafter, on December 7, 2004, the Court issued a Preliminary Injunction and Orders: (1) Freezing Assets; (2) Prohibiting the Destruction of Documents; (3) Requiring Accountings; and (4) Appointing A Permanent Receiver (Doc. No. 18) pursuant to which the Receiver was appointed permanent receiver over the

-4-

Receivership Defendants.   The plaintiff Securities and Exchange Commission ("SEC") also sued individual defendant Daniel C.S. Powell ("Powell") who was the principal of the Receivership Defendants.

3.     On September 14, 2011, shortly after commencement of the action, the Receiver filed its Report of Temporary Receiver's Activities ("Receiver's Report"). Based on the Receiver's investigation, the Receivership Defendants earned only $31,250 during the seven years between June 1, 2004 and March 31, 2011, the last date the accounting records were updated through.  The Christian Stanley, Inc. balance sheet located by the Receiver when it took physical possession of the Receivership Defendants showed a net worth deficit of almost $5 million.  The Receiver located approximately $35,000 in cash after it was appointed, and the only other asset recovered in the case was the net proceeds of the sale of three vehicles in the amount of $10,465.07.

4.     The Receivership Defendants have conducted no business since the inception of the receivership.  The Receiver has executed a Stipulated Judgment on behalf of Christian Stanley, Inc., Christian Stanley, LLC and Realty Holdings which provides, without admission of liability, for a permanent ban on activities that would violate the SEC Act and regulations.  No monetary recovery by the SEC is provided in the Stipulated Judgment in light of the insolvency of the receivership estate.

5.     Attached hereto as Exhibit 1 is the Receiver Administration Expense from Inception (September 1, 2011) to Closing ("Final Accounting") that summarizes the receipts and expenses of the receivership estate from its inception through September 30, 2015 and includes estimated closing fees and expenses from October 1, 2015 through closing.  The receivership estate is administratively insolvent, with a deficit of over $50,000 based on the estimated anticipated fees and expenses incurred and to be incurred to wind up the receivership.  The Receiver has insufficient funds to pay in full all of the fees and expenses of the Receiver and its

1    counsel and anticipates paying those fees and expenses pro rata as part of the

2    closure of the estate.

3          6.       In addition to the other relief sought in the motion which this

4    declaration supports, the Receiver's motion is its first and final fee motion.  The

5    Receiver seeks approval and authorization to pay the Receiver's fees and expenses

6    and the Receiver's attorneys' fees and expenses incurred from the inception of the

7    receivership through the closing of the estate ("Final Fee Period").  To the extent

8    assets of the receivership estate are insufficient to pay such fees and expenses, the

9    Receiver requests that the Court authorize the Receiver to pay such allowed fees

10   and expenses on a pro rata basis to the Receiver and the Receiver's counsel based

11   on the Receiver's allowed amount of fees and expenses and the Receiver's counsel's

12   allowed amount of fees and expenses.  The Final Report, Exhibit 1, summarizes the

13   fees and expenses incurred by the Receiver and counsel during the receivership, as

14   well as those that the Receiver anticipates incurring from October 1, 2015 through

15   the closing of the estate.

16         7.       For the period from the inception of the receivership through

17   September 30, 2015, there are unpaid Receiver's fees of $47,976.90 and expenses

18   of $20,158.16, and unpaid Receiver's attorneys' fees incurred to Dentons US LLP

19   of $9,819.90 and costs of $343.84.  The Receiver estimates closing expenses from

20   October 1, 2015 through closing and the final distribution of assets to be a total of

21   $18,541.23, including $6,866.23 in Receiver's fees, $1,675 in Receiver's costs, and

22   $9,500 in attorneys' fees and $500 in attorney costs.  These estimated closing fees

23   and expenses including the Receiver's and attorneys' fees and expenses for the

24   preparation, filing and service of the final wind up motion, payment of funds,

25   records destruction and other related wind up activities and expenses.  Attached

26   hereto as Exhibit 2 are true and correct copies of the redacted billing records of the

27   Receiver from the inception of the case through September 30, 2015, with

28   confidential attorney-client privileged communications and attorney work product

USW 805354225.1

1   redacted so as not to waive these privileges through disclosure.  The billing rates

2   charged in this case reflected in the billing records filed in support of the Motion for

3   the Receiver, the Receiver's members and staff are discounted at 10% from the

4   rates charged by the Receiver's firm in private sector cases as of the time of the

5   Receiver's appointment.

6       8.     The  Receiver prepared and filed its Receiver's Report on September

7   14, 2011 which details the Receiver's initial activities and its forensic accounting

8   and analysis of the Receivership Defendants' financial records.  The Receiver took

9   possession and control of paper and electronic records of the Receivership

10  Defendants, met with and interviewed Powell and contacted other key individuals,

11  including the Chief Operating Officer of Christian Stanley, Inc. and a member of

12  the audit firm that had prepared an audit of the financials in 2009 and a draft audit

13  opinion in 2010.  The Receiver determined through these sources and its own

14  analysis that Powell was paid $1,350,000 from June 1, 2004 to March 31, 2011

15  while the Receivership Defendants' net worth deficit continued to grow to almost

16  $5 million at the time the receivership was instituted.  The Receiver's forensic

17  accounting analysis confirmed that the investment scheme operated as a Ponzi

18  scheme, with the meager $31,250 in revenue being clearly insufficient to fund

19  $219,903 in purported interest expense payments to investors and with the Receiver

20  concluding that the only source from which the interest expense could have been

21  paid was funds paid into the scheme by other investors.

22      9.     The Receiver's Report also describes the business records of the

23  Receivership Defendants that described purported assets that were to secure the

24  Secured Debentures which were to support the life insurance investments the

25  victims believed they were investing in when they turned over money to the

26  Receivership Defendants.  The Receiver investigated the assets that purportedly

27  constituted the collateral for the Secured Debentures and confirmed that none of the

28  assets had been transferred to the Receivership Defendants and that the

-7-

1    Receivership Defendants in fact had no assets, other than the small amount of cash
2    the Receiver located at an account at Bank of America at the outset of the case.

3          10.    The Receiver's asset investigation also located two transfers of funds
4    made in August 2011 after Powell was aware of the SEC's investigation.  One
5    transfer was made to an overseas company in Frankfurt, Germany for $166,980 and
6    one was for $100,000 to Globo International Satellite ("Globo").  The Receiver
7    considered the limited amounts involved, the practical issues in attempting to
8    recover the funds including the fact that one of the transferees was an overseas
9    company and the limited funds in the estate, and did not pursue litigation against
10   these entities.

11         11.    The Receiver investigated three vehicles Powell stated he purchased
12   and financed in his name but which he acknowledged were acquired for the benefit
13   of Christian Stanley, Inc.  The three vehicles included a 2002 Ferrari convertible, a
14   2010 minivan and a 2011 pickup truck.  The purchase was financed through loans
15   obtained by Powell from Gilmore Bank.  The Receiver was initially advised that
16   one of the vehicles had been repossessed by Gilmore Bank at or about the time of
17   the commencement of the receivership and that the truck was in the possession of a
18   former employee who did not immediately respond to the Receiver's requests for
19   information regarding the vehicle.

20         12.    The Receiver and Gilmore Bank later agreed, with Court approval, that
21   Gilmore Bank could liquidate the vehicles. The vehicles were all sold by Gilmore
22   Bank, the Receiver reviewed the accounting for the sale proceeds, and the estate
23   recovered $10,465.07 in excess proceeds from the sale.

24         13.    The Receiver and counsel also had to address leases for three kiosks at
25   certain shopping centers at the outset of the case.  The Receiver reviewed the status
26   of any personal property located at the kiosks including any property that might
27   contain data or receivership records.  The Receiver concluded that it was in the best
28

USW 805354225.1

1    interests of the estate to promptly reject the three leases and worked with the
2    landlords to coordinate turnover of the kiosks.

3          14.    The Receiver addressed other administrative matters during the course
4    of the case.  The Receiver had to address issues regarding the Receivership
5    Defendants' web site.  The Receiver responded to inquiries and requests for
6    information by creditors and investors.  The Receiver prepared tax returns, and the
7    Receiver and its counsel monitored the status of this action and the related criminal
8    proceeding.

9          15.    Powell was under investigation by the federal criminal authorities, and
10   the Court stayed this action pending that investigation and the completion of the
11   criminal trial.  Powell was indicted by the Grand Jury for mail fraud, wire fraud and
12   obstruction of justice.  In 2014, I testified for the prosecution at the criminal trial of
13   Powell.  Powell was found guilty on all counts by a jury, and on June 5, 2015 was
14   sentenced to 121 months in prison, as reflected in a notice filed by the Government
15   in this action on June 23, 2015.

16         16.    In this case, there are believed to be at least 150 investors who are
17   potential creditors in this case and there are also approximately eight vendor
18   creditors.  Further, the identity and address of each of the investors has not been
19   confirmed by the Receiver.  If the Receiver were required to give notice to all these
20   potential creditors, such a requirement would be burdensome, time-consuming and
21   expensive for the receivership estate, including substantial photocopying costs.
22   Moreover, the Receiver would likely be unable to comply with such a requirement
23   as a practical matter given that the identity and address of all of the investor
24   creditors have not been determined.

25         17.    As a member of Robb Evans & Associates LLC, I am familiar with
26   the methods and procedures used by the Receiver and its staff and employees to
27   record the time spent rendering services to receivership estates over which Robb
28   Evans or Robb Evans & Associates LLC have been appointed.  The records

1   included as Exhibit 2 hereto are regularly prepared by the members, staff and

2   employees of Robb Evans & Associates LLC at or about the time of the services

3   rendered and each of whom has a business duty to accurately record the information

4   regarding their services set forth in these records.  The records are reviewed by the

5   Receiver's accounting staff and summarized in the Receiver's Final Accounting,

6   Exhibit 1 attached hereto.  Based upon my experience with Robb Evans &

7   Associates LLC, I believe the Receiver's methods and procedures for recording and

8   accounting for time and services for the receivership estates over which Robb

9   Evans or Robb Evans & Associates LLC have been appointed are reliable and

10  accurate.

11          18.     I have read the Motion which this Declaration supports, and to the best

12  of my knowledge, information and belief formed after reasonable inquiry, I certify

13  that (a) the Motion and all fees and expenses referenced therein are true and

14  accurate and comply with the Billing Instructions of plaintiff Securities and

15  Exchange Commission; (b) all fees contained in the motion are based on the rates

16  listed in the Receiver's fee schedule and the fees are reasonable, necessary and

17  commensurate with the skill and experience required for the activity performed; and

18  (c) the Receiver has not included in the amount for which reimbursement is sought

19  the amortization of the cost of any investment, equipment or capital outlay (except

20  to the extent that any such amortization is included within the permitted allowance

21  amounts set forth in the Billing Instructions and the costs requested herein for

22  photocopies and facsimile transmission); and (d) in seeking reimbursement for

23  service which the Receiver justifiably purchased or contracted for from a third party

24  (such as copying, imaging, bulk mail, messenger service, overnight courier,

25  computerized research, or title and lien searches), the Receiver has requested

26  reimbursement only for the amount billed to the Receiver by the third party vendor

27  and paid by the Receiver to such vendor.

28

USW 805354225.1

1       19.    The Receiver believes that its fees and costs and those of its counsel

2   are reasonable given the services rendered, the period covered by the motion, and

3   the facts and circumstances of the case.  The Receiver requests that the Court

4   approve the Receiver's Final Report and Final Accounting, approve the fees and

5   costs sought in the motion in their entirety and authorize payment from the

6   receivership assets.

7       I declare under penalty of perjury that the foregoing is true and correct and

8   that this declaration was executed this _14_ day of January 2016 at Sun Valley,

9   California.

10

11

12                                   BRICK KANE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-11-